IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| INTERWEST EXPLORATION, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES BUREAU OF LAND MANAGEMENT and KATHLEEN SGAMMA, in her official capacity as Administrator, United States Bureau of Land Management,<br><br>Defendants. | CV 23-55-BLG-SPW-KLD<br><br>FINDINGS AND RECOMMENDATION |

Plaintiff Interwest Exploration, Inc. brings this action seeking judicial review of a decision by the Interior Board of Land Appeals ("IBLA") rejecting four unpatented mining claims for failure to timely file notices of location as required by section 314 of the Federal Land Policy and Management Act ("FLPMA"), 43 U.S.C. § 1744. The parties have filed cross motions for summary judgment. (Docs. 28, 34). For the reasons stated below, Interwest's motion for summary judgment should be denied and Defendants United States Bureau of Land Management ("BLM") and Kathleen Sgamma's (collectively "Defendants") cross-motion for summary judgment should be granted.

# I. Background

## A. Statutory and Regulatory Framework

The Mining Law of 1872, 30 U.S.C. §§ 22-54, authorizes citizens to stake or "locate" valid mining claims on public lands so long as they comply with all other applicable statutory and regulatory requirements. 30 U.S.C. § 26; *see also Backes v. Bernhardt*, 523 F.Supp.3d 1233, 1237 (D. Or. 2021) (citing *Chrisman v. Miller*, 197 U.S. 313, 320-21 (1905)). Section 314 of FLPMA, enacted in 1976, amended the Mining Law by establishing a "federal recording system" that imposes certain filing requirements on holders of unpatented mining claims. *United States v. Locke*, 471 U.S. 84, 87 (1985); 43 U.S.C. § 1744. Relevant here, section 314(b) provided that the owner of an unpatented mining claim "located prior to October 21, 1976 shall, within the three-year period following October 21, 1976, file in the office of the [BLM] designated by the Secretary a copy of the official record of the notice of location or certificate of location, including a description of the location of the mining claim…sufficient to locate the claimed lands on the ground." 43 U.S.C. § 1744(b). This three-year window expired on October 22, 1979. Section 314(c) states that failure to comply with the filing requirements of section 314(b) "shall be deemed conclusively to constitute an abandonment of the mining claim…by the owner." 43 U.S.C. § 1744(c).

Consistent with the statutory language, the BLM's implementing regulations during the relevant period provided that "[t]he owner of an unpatented mining claim…located on or before October 21, 1976 on Federal land…shall file…before October 22, 1979, in the proper BLM Office a copy of the official record of the notice or certificate of the location of the claim …filed under state law…" 43 C.F.R. § 3833.1-2(a) (1978). Under Montana law, the locator of a mining claim must "[w]ithin 60 days after posting the notice of location … record the location in the office of the county clerk of the county in which the mining claim is situated." Mont. Code Ann. § 82-2-102(1). "The record must consist of a certificate of location for each claim containing: (a) the name of the lode or claim and whether located as a lode or placer claim; (b) the name of the locator or locators…(c) the date of location and the description of the claim…; and (d) the directions and distances from the discovery point that describe the claim." Mont. Code Ann. § 82-2-102(1). Like section 314(b), the BLM's implementing regulations provided that "[t]he failure to file such instruments as are required by [§ 3833.1-2(a)] within the time periods prescribed therein, shall be deemed conclusively to constitute an abandonment of the mining claim…and it shall be void." 43 C.F.R. § 3833.4(a) (1978).

### B. Factual and Procedural Background

In November 1970, Interwest's predecessor in interest, Floyd Cardinal, located 27 mining claims—IRI #s 1-26 and Bonanza No. 3 Millsite—in Sweet Grass County, Montana, and timely recorded the claims with the Sweet Grass County clerk and recorder. (Doc. 27-1 at 636-688). After Congress enacted FLPMA, Cardinal timely filed copies of the recorded location notices for IRI #s 1-26 and Bonanza No. 3 Millsite with the BLM in July or August 1978. (Doc. 27-1 at 636-688 (certificates of location date stamped received by the BLM on July 6, 1978). There is no dispute regarding the validity of IRI #s 1-26 and Bonanza No. 3 Millsite, which the Court will refer to as "the undisputed claims."

The four disputed mining claims that are the subject of this action—IRI #s 27-30—are adjacent to the undisputed claims. (Doc. 27-1 at 633). Interwest asserts that Cardinal located the disputed claims at around the same time he located the undisputed claims in November 1970 and timely recorded the disputed claims with Sweet Grass County. Interwest further asserts that Cardinal submitted location notices for the disputed claims to the BLM at the same time he submitted the location notices for the undisputed claims in July or August 1978. (Doc. 29 at 10). Although the disputed and undisputed claims are all shown on a map that Cardinal included with his location notices for the undisputed claims in July or August 1978, there is no record of BLM also having received location notices for the

disputed claims at that time or at any time before October 22, 1979. (Doc. 27-1 at 633, 690-91, 721).

BLM advised Interwest, through Cardinal, a number of times over the years that it had no record of the disputed claims having been recorded with BLM. For instance, BLM notified Cardinal that it had no record of the disputed claims in a January 25, 1984, letter acknowledging Cardinal's affidavit of annual work for the undisputed claims. (Doc. 27-1 at 140). BLM informed Cardinal that it was "unable to locate a record of the following claims which were included on your 1983 Affidavit of Annual Representation: IRI # 27, 28, 29 and 30." (Doc. 27-1 at 140). Documentation from a follow-up phone conversation between BLM and Cardinal on March 15, 1984, reads, in relevant part, as follows:

> Several times they had included on their annual assessment the IR #27-#30 mining claims along with the other filed mining claims, and we just wanted them to know that those claims were not recorded in this office —only on the maps they had submitted. [….] Mr. Cardinal stated that, "they were recorded in BLM's office as they were included on the maps." I explained to him that they had never been recorded with a certificate, filing fee and M MC number.

(Doc. 27-1 at 141). In a letter dated October 15, 1984, BLM reiterated that it had no record of the disputed claims "being properly recorded in accordance with FLPMA." (Doc. 27-1 at 143). And in an October 17, 1991, letter rejecting the annual affidavit for the disputed claims, BLM similarly explained: "We have

searched our files and cannot find a record of the IRI 27 through IRI 30 mining claims recorded in this office." (Doc. 27-1 at 148). On March 1, 2021, BLM again advised Cardinal in writing that the disputed "claims *do not exist.*" (Doc. 27-1 at 209) (italics in original).

On August 29, 2022, BLM received location notices from Interwest for the disputed claims, each with a location date of November 7, 1970, a notarized signature dated August 24, 2022, and a county recordation stamp dated August 29, 2022. (Doc. 27-1 at 706-13). On September 22, 2022, BLM sent Interwest a notice declining to record the disputed claims. (Doc. 27-1 at 358-60). BLM wrote that although the disputed claims had "been included on assessment documents and a map, this does not meet regulatory requirements for proper filing [of] a mining claim with the BLM" and advised Interwest that the disputed claims were "not active mining claims." (Doc. 27-1 at 360).

On May 26, 2023, BLM issued a decision formally rejecting Interwest's attempt to record the disputed claims. (Doc. 27-1 at 725-27). BLM explained that under 43 C.F.R. § 3833.11,[1] the owner of an unpatented mining claim must record

[1] The BLM's decision cited the current version of 43 C.F.R. § 3833.11, which requires that a notice of location be recorded with the proper BLM office within 90 days from the date of location. As later explained by IBLA, that regulation does not apply here because it "describes requirements applicable to claims located after October 21, 1976." (Doc. 27-1 at 1037). IBLA nevertheless determined that BLM

a notice of location in the proper BLM notice within 90 days of the date of location and must pay processing, location, and initial maintenance fees. (Doc. 27-1 at 725). BLM determined that the "IRI #27, IRI #28, IRI #29, and IRI #30 lode mining claims were not received within the required time frame and with the required fees." (Doc. 27-1 at 725). BLM rejected the recordation of the disputed claims and declared the claims "abandoned and void." (Doc. 27-1 at 725).

Interwest appealed BLM's decision to the IBLA. (Doc. 27-1 at 728-29). On December 11, 2024, the IBLA issued a decision affirming the BLM's determination that the disputed claims were abandoned and void based on Interwest's failure to file location notices by the statutory deadline. (Doc. 27-1 at 1027-38). Specifically, the IBLA concluded that "[t]o maintain the disputed claims following the passage of FLPMA, the claimant was required to file with BLM a notice of location or certificate of location for those claims by October 22, 1979." (Doc. 27-1 at 1038). IBLA observed that "BLM's records contain[ed] no evidence that such a filing occurred," and found that Interwest had "not met its burden to overcome the presumption of regularity in BLM's recordkeeping." (Doc. 27-1 at 1038). Because "FLPMA lawfully dictates that the failure to timely file the

---

"was ultimately correct in concluding that the location notices for the disputed claims were not received within the required time frame." (Doc. 27-1 at 1037-38).

required location notices conclusively constitutes abandonment of the claims," the IBLA determined that "Interwest ha[d] not shown that BLM erred in its Decision declaring the disputed claims abandoned and void." (Doc. 27-1 at 1038).

Interwest brings this action for judicial review claiming that IBLA's final decision was arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 7602(2)(A). (Doc. 1). Interwest's Second Amended Complaint, which is the operative pleading, includes two claims for relief. (Doc. 19). Count 1 alleges the IBLA's decision is erroneous because "BLM's record clearly shows references of the disputed claims on the map submitted by" Cardinal, and Cardinal has "always maintained that the other notices of location documentation related to those claims was submitted at the same time as his other mining claims referenced on the same map" but he "has never been allowed to testify on that issue and no hearing has ever been held to address that factual dispute." (Doc. 19 at ¶ 28). Count 2 alleges a Fifth Amendment due process violation based on the agency's failure to hold a hearing to address whether Cardinal properly submitted the required documentation for the disputed claims at the same time he submitted the undisputed claims. (Doc. 19 at 8-9). The parties have filed cross-motions for summary judgment, which are fully briefed and ripe for ruling. (Docs. 28, 34).

## II. Legal Standards

### A. Administrative Procedures Act

The APA permits judicial review of agency decisions and provides that a court shall hold unlawful and set aside agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The arbitrary and capricious standard is a narrow one, and the reviewing court cannot substitute its judgment for that of the agency. *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 513-14 (2009). "[T]he touchstone of 'arbitrary and capricious' review under the APA is 'reasoned decisionmaking.'" *Backcountry Against Dumps v. Federal Aviation Administration*, 77 F.4th 1260, 1267 (9th Cir. 2023) (citation omitted). An "agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Altera Corp. & Subsidiaries v. Comm'r*, 926 F.3d 1061, 1080 (9th Cir. 2019) (quoting *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (internal quotation marks omitted).

A court's review is generally limited to the administrative record. *Goffney v. Becerra*, 995 F.3d 737, 747-48 (9th Cir. 2021). The arbitrary and capricious standard is "highly deferential, presuming the agency action to be valid and

affirming the agency action if a reasonable basis exists for its decision." *Northwest Ecosystems Alliance v. U.S. Fish and Wildlife Serv.*, 475 F.3d 1136, 1140 (9th Cir. 2007); *see also San Luis & Delta-Mendota Water Authority v. Jewell*, 747 F.3d 581, 601 (9th Cir. 2014) (the agency's decision is "entitled to a presumption of regularity" under the arbitrary and capricious standard of review). The court reviews the agency's factual findings for substantial evidence, and "will not disturb the agency's findings under this deferential standard unless the evidence presented would compel a reasonable finder of fact to reach a contrary result." *Herrera v. U.S. Citizenship & Immigration Services*, 571 F.3d 881, 885 (9th Cir. 2009) (citation and internal quotation marks omitted).

**B. Summary Judgment**

In an action brought under the APA, summary judgment serves as an avenue for deciding whether a final agency determination is adequately supported by the administrative record. *Nw. Motorcycle Ass'n v. U.S. Dep't Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994). "In reviewing the administrative record under this standard, the Court's function is not to determine whether genuine issues of material facts exist," but rather to decide 'the legal question of whether the agency could reasonably have found the facts as it did." *Fidelity Exploration & Production*

*Co. v. Bernhardt*, 2019 WL 2029482, at *3 (D. Mont. Jan. 24, 2019) (citing *Occidental Eng'g Co. v. I.N.S.*, 753 F.2d 766, 769 (9th Cir. 1985)).

## III. Discussion

Interwest argues the IBLA's decision declaring the disputed claims abandoned and void was arbitrary and capricious because the agency failed to hold an evidentiary hearing to resolve what it describes as a factual dispute over whether Cardinal timely filed location notices with the BLM. Alternatively, Interwest argues this case should be remanded to the IBLA for a determination on whether the agency should be estopped from declaring the disputed claims presumptively abandoned. Defendants counter that the IBLA's decision is supported by substantial evidence and comports with the APA, and there is no basis for estoppel. The Court agrees with Defendants.

### A. IBLA Decision

As outlined above, when FLPMA was first enacted, it required the holders of existing unpatented mining claims to register their claims with the BLM by filing a copy of the official record of the notice or certificate of location for each claim with the BLM no later than October 21, 1979. 43 U.S.C. § 1744(b). Failure to comply with FLPMA's filing requirements would "be deemed conclusively to constitute an abandonment of the mining claim …by the owner." 43 U.S.C. §

1744(c).

The United States Supreme Court interpreted FLPMA's conclusive abandonment provision in *United States v. Locke*, 471 U.S. 84 (1985). The Supreme Court concluded that "[s]pecific evidence of intent to abandon simply made irrelevant by § 314(c); the failure to file on time, in and of itself, causes a claim to be lost." *Locke*, 471 U.S. at 100. Although FLPMA's filing deadlines "necessarily operate harshly," the Supreme Court made clear they "cannot be complied with, substantially or otherwise, by filing late—even by one day." *Locke,* 471 U.S. at 101. The Supreme Court upheld the retroactive application of FLPMA's filing requirements to claims located before FLPMA was enacted, and held that § 314(c) did not violate the Fifth Amendment's proscription against the taking of private property because Congress is not required "to compensate the owner for the consequences of his own neglect." *Locke*, 471 U.S. at 107. The Supreme Court further held that the legislative process, along with FLPMA's three-year grace period for filing, provided constitutionally adequate due process. *Locke*, 471 U.S. at 108-09.

As detailed in the IBLA's decision, there is nothing in the administrative record establishing that Cardinal or Interwest filed location notices for the disputed claims with BLM before FLPMA's October 22, 1979, filing deadline. Although

the record includes location notices for the undisputed claims, which were filed with the Sweet Grass County clerk in November 1970 and stamped as received by BLM in July 1978, there are no similarly dated location notices for the disputed claims. To the contrary, the record shows that Interwest recorded location notices for the disputed claims with the county and submitted them to BLM on August 29, 2022—more than forty years after FLPMA's October 22, 1979, statutory filing deadline. (Doc. 29-1 at 706-13).

Interwest has nevertheless argued to the agency, and continues to argue here, that Cardinal timely filed location notices for the disputed claims with BLM at the same time he filed location notices for the undisputed claims. Although BLM has no record of receiving location notices for the disputed claims at that time, Interwest argues it is plausible that BLM employees in 1978 may have lost or misfiled the paperwork. (Doc. 35 at 5). IBLA expressly addressed this argument in its decision, beginning with the presumption of regularity that attaches to the actions of government agencies. (Doc. 27-1 at 1034).

It is well-settled that "[t]here is a presumption of regularity in the performance of their duties by government officials" at agencies like BLM. *Red Top Mercury Mines, Inc. v. United States*, 887 F.2d 198, 202-03 (9th Cir. 1989) (citing *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 415 (1971)),

*abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977)). This presumption can be overcome by evidence "showing that it was 'more probable than not' that a document was filed with the BLM." *Barlow v. U.S.*, 2005 WL 189718, at *4 (D. Or. Jan. 26, 2005), findings and recommendation adopted, 2005 WL 851153 (D. Or. 2005); *see also Smith*, 199 IBLA 115, 121 (2024)[2] (recognizing that the presumption of regularity can be overcome with evidence showing it was more likely than not that documents were filed with BLM and citing several IBLA decisions to that effect).

IBLA began with the premise that that the absence of a document in BLM records "gives rise to the presumption that it was never filed, because government employees are presumed to have properly performed their official duties and not lost or misplaced a legally significant document." (Doc. 27-1 at 1034). "Unless properly rebutted," IBLA reasoned, "the presumption of regularity required [it] to conclude that BLM did not in fact receive a document absent from its records." (Doc. 27-1 at 1034). IBLA determined that Interwest had not provided sufficient evidence to rebut the presumption that BLM did not receive location notices for the disputed claims before the statutory filing deadline. (Doc. 27-1 at 1035). IBLA

[2] Available at https://www.oha.doi.gov/IBLA/ibladecisions/199IBLA115.pdf

noted the only evidence Interwest provided to support its assertion that Cardinal timely submitted location notices for the disputed claims to BLM was the map he filed along with the location notices for the undisputed claims. (Doc. 27-1 at 1036). Although the map shows the location of the disputed claims, IBLA appropriately found that the map was not by itself sufficient to satisfy FLPMA's filing requirements. IBLA acknowledged that the map "could support an inference that Cardinal believed he held the disputed claims," but found the map alone did not show it was more likely than not that Cardinal had filed location notices for the disputed claims with BLM prior to October 22, 1979. (Doc. 27-1 at 1036).

To the contrary, IBLA cited substantial evidence in the record providing stronger support for an inference that BLM did not in fact receive location notices for the disputed claims along with the location notices for the undisputed claims. (Doc. 27-1 at 1037). For example, IBLA cited a contemporaneous letter from Cardinal dated August 21, 1978, representing that "[t]wenty-seven mining claims were recorded with" BLM in July 1978. (Doc. 27-1 426, 1037). The disputed claims were not included in the list of those twenty-seven claims. (Doc. 27-1 at 426-427). IBLA also pointed to evidence that Cardinal later defended the validity of the disputed claims by arguing he was not required to have filed certificates of location (Doc. 27-1 at 141, 1037) and cited Cardinal's apparent admissions many

years later that location notices for the disputed claims were not recorded with BLM (Doc. 27-1 at 513, 518, 524, 1037). Additionally, IBLA noted that an intervenor in the proceedings had conducted searches of county records and found no record of location notices for the disputed claims, and Interwest had offered no rebuttal to that evidence. (Doc. 27-1 at 1007-08, 1018, 1037). Particularly in light of such evidence, IBLA reasonably found that the map, standing alone, was insufficient to rebut the presumption that BLM did not receive location notices for the undisputed claims before FLPMA's filing deadline. *See e.g. Red Top Mercury Mines,* 887 F.2d at 203 (holding that the plaintiff had not presented sufficient evidence to overcome the presumption of regularity where the plaintiff did not state that a notice of assessment was filed with the BLM, but only that the practice was to file and it was believed a filing was made); *Barlow*, 2005 WL 189717, at *4 (holding the plaintiffs did not rebut the presumption of regularity that government officials performed their duties properly by asserting they mailed an affidavit of annual assessment work because there was no evidence that BLM ever received it).

In challenging the IBLA decision here, Interwest primarily maintains that the map is sufficient to raise a factual dispute as to whether Cardinal filed the appropriate paperwork with BLM and this case should therefore be remanded to the agency for an evidentiary hearing. (Doc. 29 at 8). To bolster this position,

Interwest cites evidence that Cardinal often submitted payments to BLM in an attempt to satisfy the annual mining claim maintenance requirements for the disputed claims. IBLA addressed this evidence in its decision, accurately observing "that BLM repeatedly responded to Cardinal's filings by noting that the claims had not been recorded and returning and refunding the associated submissions and fees." (Doc. 27-1 at 1030-31, citing Doc. 27-1 at 141, 143, 148, 209, 276, *see also* Doc. 27-1 at 230, 234-39, 286-319).

To the extent Interwest argues the map and attempted payments Cardinal submitted to BLM raise a disputed issue of material fact entitling it to an evidentiary hearing before the BLM, the Court is not persuaded. As detailed above, there is no evidence in the administrative record establishing that BLM received location notices for the disputed claims before FLPMA's October 22, 1979, filing deadline. What Interwest calls a factual dispute is, as Defendants submit, "nothing more than a lack of evidence in the record for their disputed position or assertion." (Doc. 34 at 2). Interwest had ample opportunity to present evidence in support of its position during the administrative proceedings. And as Defendants further point out, if Interwest believed it could have benefitted from an evidentiary hearing, it could have moved for one under the regulations governing appeals before the IBLA. *See* 43 C.F.R. § 4.409(g) (providing that any party may file a motion that

the IBLA refer an appeal to an ALJ for an evidentiary hearing and listing the IBLA's standards for granting such a motion). Interwest does not address this regulation or explain why it did not file a motion with the IBLA for an evidentiary hearing while this matter was still pending before the agency. Interwest has not shown that it would be appropriate for the Court to remand this case to the agency for an evidentiary hearing.

Because there is no evidence in the administrative record demonstrating that Cardinal submitted county-recorded location notices for the disputed claims to BLM before the October 22, 1979, filing deadline under FLPMA, and IBLA's determination that Interwest failed to overcome the presumption of regularity in BLM's record-keeping is supported by substantial evidence, IBLA did not abuse its discretion in declaring the disputed claims abandoned and void.

**B. Estoppel**

Alternatively, Interwest argues this case should be remanded to IBLA for a determination on whether the agency should be estopped from declaring the disputed claims presumptively abandoned. Interwest asserts that in *Locke*, the Supreme Court remanded the "case back to the lower court for a factual analysis of whether the BLM should be estopped from declaring the claims presumptively abandoned." (Doc. 29 at 12). Interwest's reading of *Locke* is based on a concurring

opinion; although the majority opinion remanded the case to the district court for further proceedings, it did so without any specific instructions to consider estoppel. *Locke*, 471 U.S. at 110. Additionally, the concurring opinion Interwest relies on recognized that the case involved "unusual facts," namely, that the mining claimants alleged "they contacted BLM and were informed by agency personnel that they could file the required materials on December 31, 1980"—after FLPMA's filing deadline—and they "relied on that advice and hand-delivered the appropriate documents to the local BLM office on that date." *Locke*, 471 U.S. at 110-11 (O'Connor, J. concurring). Because there are no similar "unusual facts" alleged or present here, *Locke* does not support Interwest's estoppel argument.

Interwest contends that the IBLA's decision declaring the disputed claims presumptively abandoned is a "harsh outcome" and asserts IBLA did not consider the possibility that BLM employees may have lost or misfiled the paperwork. (Doc. 35 at 6). As discussed above, however, IBLA did consider that possibility and rejected it based on the evidence in the administrative record. The Supreme Court recognized in *Locke* that strict application of FLPMA's filing deadline might lead to harsh results, but found it was obligated to apply the statute as written because the phrase "prior to" was clear, and "Congress intended in § 314(c) to extinguish those claims for which timely filing were not made." *Locke*, 471 U.S. at

95-96, 100. Accordingly, and on the facts of this case, the Court finds Interwest's estoppel argument unpersuasive.

## IV. Conclusion

For the reasons set forth above,

**IT IS RECOMMENDED** that Interwest's motion for summary judgment (Doc. 28) be DENIED and Defendants' cross-motion for summary judgment (Doc. 34) be GRANTED.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after entry hereof, or objection is waived.

DATED this 28th day of July, 2026.

Kathleen L. DeSoto
United States Magistrate Judge